JAMES McDONNELL, Appellant, v. WINTHROP STATE BANK et al., Appellees.

JUDGMENT:    Lien—Married Woman Described by Name of Husband.  A judgment in which the defendant (a married woman) is described by a name consisting of the surname and Christian name of her husband, with the prefix "Mrs.," is valid, and becomes a lien upon the lands owned by such defendant. Sec. 3801, Code, 1897.

PRINCIPLE APPLIED:  Annie McDonnell married Terrance Diggins, and thereafter was not only generally known as "Mrs. Terrance Diggins," but she often so signed her name. She had a sister-in-law by the name of Annie Diggins. Subsequent to her marriage, her father died, and she inherited certain lands. Still later, in a confession of judgment, she signed her name as "Mrs. Terrance Diggins," and the judgment was entered

accordingly. At a still later time, the lands were partitioned and sold, but the said judgment plaintiff was not made a party to the proceeding. In the partition proceeding, the name of said judgment defendant only appeared as "Anna McDonnell." The purchaser at the sale, before purchasing, procured an abstract from a regular abstracter, and the abstract did not show said judgment, and he had no actual knowledge thereof. This purchaser was a brother of said judgment defendant's, both resided in the same county, and the brother, prior to the time he purchased, knew that his sister was generally known as "Mrs. Terrance Diggins." *Held*, the judgment was a lien on the lands.

PROCESS:     Original Notice—Married Woman—Marriage Name in
2     Lieu of Maiden Name. Full jurisdiction of the person of a married woman is obtained, in an action against her, by proceeding against her under a name consisting of the surname and Christian name of her husband, preceded by the prefix "Mrs."

PRINCIPLE APPLIED:     See No. 1.

NAMES:     Assumed Names—Name Other Than Baptismal Name—
3     Effect. Principle recognized that one may become so generally known by a name other than the baptismal name as to justify proceedings against him under such assumed name.

*Appeal from Buchanan District Court.*—Charles W. Mullan, Judge.

Wednesday, December 13, 1916.

Rehearing Denied, March 12, 1917.

Action to quiet title to real estate, and to remove the cloud of a judgment held by the defendant the Winthrop State Bank, against the former owner of an interest in the real estate involved. The general claim of the plaintiff is that the defendant's alleged judgment was defective in form, in that it was not entered upon the record against the judgment defendant in her true name; that the plaintiff purchased the land for full value, in good faith, and without notice, either actual or constructive, of such a

judgment. Upon trial had, there was a decree dismissing the petition, and the plaintiff has appealed.—*Affirmed.*

*R. J. O'Brien, M. A. Smith* and *Edwards, Longley, Ransier & Smith,* for appellant.

*M. W. Harmon,* for appellees.

1. JUDGMENT:
lien: married
woman de-
scribed by name
of husband.

Evans, J.—To put it briefly, the real question in this case is whether a judgment is valid as such when entered against a married woman in her married name, including not only the surname of her husband, but his christened name also; and this in lieu of the maiden name of the judgment defendant, either surname or christened name. The maiden name of the judgment defendant was Annie McDonnell. She married Terrance Diggins. The judgment plaintiff (defendant here) took judgment against her as "Mrs. Terrance Diggins," the judgment being in all other respects regular.

The claim of the plaintiff is that, in order to be valid, a judgment should have been entered against her in the name of "Annie Diggins;" that, because of the failure to so enter it, the record of the judgment afforded no constructive notice to the plaintiff as a subsequent innocent purchaser of the land.

Stating the facts more fully, James McDonnell, the plaintiff herein, and Mrs. Diggins are brother and sister. The land in question was formerly owned by their father, who died in 1894. Title thereto was cast upon his children, one seventh to each. In the probate proceedings affecting the estate of the father, the name of Mrs. Diggins appeared as Annie Diggins. She continued to own her one-seventh interest in the real estate, until it was divested by a partition sale in 1912, at which sale the plaintiff herein became the purchaser. Prior to such sale, Mrs. Diggins confessed judgment in favor of the Winthrop State Bank for $1,086. To such confession, she signed her name as "Mrs. Terrance

Diggins." The judgment was regularly entered against her in the district court in that name and was duly indexed accordingly, both in the Judgment Record and in the "All Lien Index." The plaintiff bid off the land at the partition sale, and afterwards paid the purchase price thereof in full, without any actual knowledge that there was any judgment against his sister, Mrs. Diggins. Before paying the purchase money, he obtained an abstract from a regular abstracter, and this abstract failed to show the judgment in question. Mrs. Diggins had been married to her husband 25 years, and was generally known as "Mrs. Terrance Diggins." Her husband had recently become insane, and was confined in an asylum. She had been appointed his guardian. She had transacted more or less business, and had often signed her name therein as "Mrs. Terrance Diggins." She was also known as "Mrs. Terry Diggins," and as "Annie Diggins." She had a sister-in-law who was also "Annie Diggins." This fact may have stimulated the use of the christened name of her husband, both by herself and by her friends, by way of differentiation. The plaintiff and Mrs. Diggins lived in the same county, though 12 or 15 miles apart. The plaintiff was entirely familiar with the name of his sister's husband, and knew that she was often known as "Mrs. Terrance Diggins." He did not, however, know that this judgment had been entered against her.

As already indicated, the plaintiff purchased the land at a regular partition sale. The record herein does not disclose whether the judgment in question was entered prior to the *commencement* of the partition proceedings. In support of the decree of the trial court, we assume the affirmative; otherwise, a question of *lis pendens* might arise as against the judgment plaintiff. We assume also that the judgment plaintiff, being such at the time of the commencement of the partition proceedings, was not a party thereto, and had no notice thereof, although the record is silent at this point.

The basic argument for the appellant is that, because of the alleged misnomer in the name of the judgment de-fendant, the judgment as thus entered failed to impart constructive notice to a subsequent purchaser. We shall, therefore, confine our consideration to this proposition.

Section 3801 of the Code is as follows:

"Judgments in the supreme or district court of this state, or in the circuit or district court of the United States within the state, are liens upon the real estate owned by the defendant at the time of such rendition, and also upon all he may subsequently acquire, for the period of ten years from the date of the judgment."

It will be noted that there is no provision of our statute requiring the holder of a judgment to give notice of his judgment, either actual or constructive. The express provision is that judgments "are liens upon the real estate owned by the defendant." It is true, however, that the statute imposes certain record formalities as conditions prerequisite to the existence of a judgment. Until these formalities are complied with, there is no judgment, in a legal sense. There must be an actual entry of the judgment upon the proper record, and there must be a proper index of the judgment, before the judgment can be recognized as such. These formal requirements are undoubtedly intended to enable the searcher to discover the judgment. These requirements are somewhat analogous in principle to the requirements for recording and indexing instruments in the recorder's office for the purpose of constructive notice, and the reasons and principles governing the one may very properly be followed in considering the other. The purchaser of the real estate is necessarily charged with notice of the statutory provision that the land which he purchases is charged with the lien of any judgments which shall have been entered within ten years against any record owner of the land who was or became such after the entry of such judgment.

The first question involved herein, there-

**2. Process: original notice: married woman: marriage name in lieu of maiden name.**
fore, really is whether the judgment attacked was valid as such. No question of fraud, collusion or bad faith is involved. There is no claim that the name adopted by the judgment defendant was assumed for the purpose of misleading or deceiving anyone. Reduced to its lowest terms, the question is, Was it legally permissible to obtain jurisdiction over Mrs. Diggins under the name of "Mrs. Terrance Diggins?" If yea, was it likewise permissible to enter a valid judgment against her under such name?

The appellant necessarily contends for the negative answer to this query. There are authorities which seem to sustain the appellant's contention at this point. *Uihlein v. Gladieux*, (Ohio) 78 N. E. 363. They may be controlled by statutory provisions differing from ours; if not, they do not commend themselves to our judgment. They also run counter to our former holdings.

**3. Names: assumed names: name other than baptismal name: effect.**
We can conceive of no fair legal reason why a married woman may not be known by the name of her husband, including his christened name, where she uses therewith the designation of "Mrs." We think it is a matter of common knowledge that married women are known to the community generally more readily by the names of their husbands than by their own maiden names, either christened or surname. The use of a husband's name in such manner is not calculated to mislead or to deceive even a stranger. Much less is it calculated to deceive such of a married woman's own near relatives as are familiar with her married name. There is no legal inhibition against the use of a name by which one is generally known. The baptismal name is usually regarded as the real name, and therefore the legal name; but it frequently happens that one may become so generally known by another name that the

use thereof by him becomes general and habitual. It would be a harsh rule that would render illegal all transactions entered into in such name, where there was no sinister purpose in its use. A married woman changes her maiden surname by a sort of compulsion of custom, and this furnishes some reason why great liberality of choice should be extended to her in the use of her husband's name, either in whole or in part.

We have had occasion hitherto to consider to some extent the question of the use of different names by the same individual. *State Sav. Bank v. Shinn*, 130 Iowa 365; *Loser v. Plainfield Sav. Bank*, 149 Iowa 672. The discussion in those cases has its application here. The trend of the discussion therein was properly appreciated by the trial court. The reasoning therein is quite conclusive here. What we hold, therefore, is that the judgment against Mrs. Diggins in the name of "Mrs. Terrance Diggins" was valid as such against her. Being valid, it became, as against her, a lien upon her interest in this land, under the express provisions of the statute. The name used by her was so used in good faith, and had been so used by her generally. It was appropriate and was not calculated to conceal her identity. On the contrary, it was calculated to disclose her identity. The plaintiff himself knew the judgment defendant as "Mrs. Terrance Diggins." The use of such name did not mislead him as to the identity of his sister. If he was misled, it was because he did not know there was a judgment against his sister under any name, and not because he failed to discover her identity by reason of the name used. If he had examined the proper index under the name "Diggins," confessedly he would have recognized his sister in the name of Mrs. Terrance Diggins.

Good faith or honest mistake on the part of the plaintiff, or bad faith, if any, upon the part of Mrs. Diggins in receiving the purchase price, did not have the effect of de-

stroying the valid judgment lien of the defendant bank. Other remedies might have been open to the plaintiff wherein all these considerations might enter, but we are not considering these. If the plaintiff were now seeking to recover back a part of the purchase price from his sister or from the referee, or was seeking to repudiate or rescind the sale *in toto,* because of having been misled or deceived, quite a different question would be presented. The issue has been narrowed down for us to the one question: Was the judgment a lien upon Mrs. Diggins' interest in the land? Answer yes or no. The trial judge answered in the affirmative, and we are clear that his finding must be—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.