BUILDER'S LUMBER COMPANY, Plaintiff, v. STUART and others, Defendants. [Three appeals.]

*January 8—February 3, 1959.*

358

For the plaintiff there were briefs and oral argument by *Dale G. Waterman* of La Crosse.

For the defendant Gateway Lumber Company there were briefs by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Leonard F. Roraff*.

For the defendant Popple & Le Duc Lumber Supply Company, Inc., there was a brief and oral argument by *Noel E. Bergeron, Jr.,* of Chippewa Falls.

For the defendant Segelke & Kohlhaus Company there was a brief by *Hubert V. Fuller* of La Crosse.

For other defendants there was a brief by *Ruediger & Joanis* of La Crosse, for Raymond Hengel and William

Unger; *William J. Sauer* of La Crosse, for Emil Ihle; *James J. Bannen* of La Crosse, for Gordon Quisel; and *Schubert & Franzini* of La Crosse, for Victor Zahn and William Stilter; and oral argument by *Robert E. Joanis.*

BROADFOOT, J. The first question to be determined is whether the trial court committed error in permitting judgment in favor of the mechanic's lien claimants Stilter, Unger, Ihle, Hengel, Quisel, and Zahn.

The complaint made the following allegation:

"That the public records of La Crosse county, in the custody of the officials of La Crosse county, state of Wisconsin, entitled thereto, show the following alleged liens, judgments, and mortgages: . . ."

Thereafter it recited that each of said lien claimants had filed a claim for mechanic's lien, giving the date of filing, together with the first and last days on which labor or materials were furnished, as well as the amount thereof. The complaint further alleged that the plaintiff had insufficient knowledge to form a belief as to the validity of the alleged liens and therefore denied the same and put each of said defendants to his proof.

The answer of Gateway Lumber Company alleged it had insufficient information to form a belief as to the validity and priority of the liens set forth in the complaint and therefore it denied the same and put the plaintiff and the other claimants to their proof.

The third appellant, Popple & Le Duc Lumber Supply Company, Inc., did not put in an answer.

Upon the trial said lien claimants testified as to their agreements with the Stuarts, what labor and materials they furnished for the construction upon said lot 8, the reasonable value thereof, and the amount due. They further testified

that they had filed claims for lien or had caused the same to be done.

It is now contended that six of said lien claimants failed to prove their claims because they did not introduce the original claims for lien or certified copies thereof in evidence upon the trial. No issue was raised as to the filing of the claims for lien by the plaintiff's complaint or the answer of Gateway. The validity and priority thereof were challenged. The effect of the pleadings was to admit that claims of lien were filed on the dates specified in the complaint. No question was raised during the trial as to the form or contents of the claims for lien. In Wisconsin the lien laws are remedial in character and are to be liberally construed. *Findorff v. Fuller & Johnson Mfg. Co.* 212 Wis. 365, 248 N. W. 766; *City Lumber & Supply Co. v. Fisher,* 256 Wis. 402, 41 N. W. (2d) 285. In view of this rule the record supports a finding by the trial court that each of said claims was properly filed. Gateway does not challenge the proper filing of a claim for mechanic's lien by the plaintiff, but contends that plaintiff failed to prove a contract with the owner of lot 8 to furnish materials for the improvement of lot 8. It appears from the record that plaintiff had no direct contract with the owner, Nelda Stuart. Its negotiations were all with her husband, Earl Stuart. Gateway contends that plaintiff did not present proper proof that Earl Stuart was the agent of his wife, and therefore plaintiff had no claim against her.

The complaint alleged that in contracting with plaintiff, Earl Stuart was the agent of Nelda Stuart. That allegation was not denied in Gateway's answer. The record clearly shows an express contract between plaintiff and Earl Stuart for the furnishing of building materials to be used on lot 8. In addition thereto the record discloses that the Stuarts lived only two doors from lot 8 during the construction period; that Mrs. Stuart was present during the construction period; that other agreements for the improvement of lot 8 were

made with both of the Stuarts and that this was the fourth construction project in which both of the Stuarts engaged.

Since the allegation of agency in the complaint was not denied it was not an issue in the case and Gateway is bound by the pleadings. In *DeByle v. Roberts,* 273 Wis. 648, 653, 79 N. W. (2d) 115, the following from Restatement, 1 Agency, p. 65, sec. 22, comment *b,* was quoted with approval:

" 'Neither husband nor wife by virtue of the relationship has power to act as agent for the other. The relationship is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs.' "

With that rule in mind, the record supports a finding that Stuart was the agent for his wife and had authority to enter into the contract with plaintiff.

Upon the trial the manager of the plaintiff testified that plaintiff delivered building materials of the value of $2,692.38 to lot 8 for the buildings being erected thereon. He further testified that Earl Stuart called at plaintiff's place of business with a truck and took delivery there of building materials valued at $3,276.68, which he stated were to be used for the improvement of lot 8, and that information was noted on the invoices. The trial court held that plaintiff was entitled to a lien only for the amount of materials it delivered to lot 8. The plaintiff contends that it was entitled to a lien for the full amount of the materials furnished.

Sec. 289.01, Stats. 1953, provided that every contractor who furnishes materials for the improvement of land shall have a lien therefor. There are two major doctrines involving the application of the lien laws. One is the doctrine that a delivery of materials to the building site or a furnishing of

such materials for the particular improvement to the owner or his agent is sufficient to maintain a mechanic's lien. A second and more-restricted doctrine is that the materials must be actually used in the building or other improvement for which they were furnished in order to sustain a lien.

An annotation which discusses these doctrines and particular application thereof appears in 39 A. L. R. (2d) 397. A review of the Wisconsin cases starts on page 438 thereof. The following cases are there reviewed: *Esslinger v. Huebner,* 22 Wis. *632; *Fitzgerald v. Walsh,* 107 Wis. 92, 82 N. W. 717; *Francis & Nygren Foundry Co. v. King Knob Coal Co.* 142 Wis. 619, 126 N. W. 39; *Barker & Stewart Lumber Co. v. Marathon Paper Mills Co.* 146 Wis. 12, 130 N. W. 866.

The above cases, together with *Neumann v. Strandt,* 195 Wis. 610, 219 N.W. 348, are cited in the plaintiff's brief. In the *Neumann Case* the court stated the rule as follows (p. 613):

"Thus materials and services can be furnished upon the credit of the building to be erected and the land upon which it stands. Otherwise the owner of real estate might, as against materials furnished and services rendered, unjustly enrich himself at the expense of the materialman furnishing materials and those rendering services. In the early case of *Esslinger v. Huebner,* 22 Wis. *632, it was held that where materials were sold upon the credit of a building to be erected, the owner could not, by thereafter disposing of them for money and then procuring other materials, defeat the right of the materialman to a lien; and so in *Barker & Stewart L. Co. v. Marathon P. M. Co.* 146 Wis. 12, 130 N. W. 866, it was held that the lumber and materials used in the erection of a cofferdam and concrete forms, although not physically incorporated into the completed structure, nevertheless entered into the value of the completed structure and the materialman was entitled to a lien therefor."

The comment in the A. L. R. annotation on Wisconsin cases states that the holdings involving the particular ques-

tions in the cases there discussed were dicta. If so, we now declare it to be the law in Wisconsin that the delivery of materials to the owner or his agent, either upon the premises or otherwise, for use upon or in a particular project, is sufficient to sustain a mechanic's lien.

In this case the plaintiff delivered materials of the reasonable value of $5,969.06, and it was entitled to judgment for that amount.

Segelke & Kohlhaus Company obtained a judgment against L. E. Stuart, also known as Earl L. Stuart, and Nelda Stuart, also known as Nelly Stuart, on January 8, 1954. In docketing the judgment on the same date the clerk of court did not comply with the provisions of sec. 270.74, Stats. 1953, by entering in the docket the place of abode and vocation of the judgment debtors. Sec. 270.79 provides that a judgment, when properly docketed and the docket gives the judgment debtor's place of abode and his occupation, trade, or profession, becomes a lien on the real property of the judgment debtor for a certain period. During the trial and on October 28, 1955, the clerk of court added to his docket the place of abode and vocation of the judgment debtors. The *lis pendens* in this action was recorded on April 12, 1955. The attorney for the judgment creditor relied upon the case of *Darling & Co. v. Follett Farms,* 217 Wis. 294, 258 N. W. 607, as authority for its claim that it had a valid judgment lien. This was because the attorney for Gateway had examined the court records and knew who the judgment debtors were. The same showing was not made upon the trial as to the plaintiff, and the plaintiff also is appealing from that part of the judgment directing the payment of the Segelke & Kohlhaus judgment.

A judgment must be properly docketed to become a lien. Sec. 270.79, Stats. 1953, requires that the docket give the judgment debtor's place of abode and his occupation, trade or profession, as well as the other information required by

sec. 270.74 in order to constitute the judgment a lien. Under the situation here Segelke & Kohlhaus Company had a valid judgment but that judgment did not become a lien prior to October 28, 1955, because the clerk had not properly docketed the same.

The above also applies to the judgment of J. S. Hines. He had a valid judgment but because the clerk had not properly docketed the same the judgment did not become a valid lien. Therefore the trial court was in error in determining that the Segelke & Kohlhaus Company and J. S. Hines judgments were liens prior to plaintiff's mortgage and the judgment lien of Gateway.

Popple & Le Duc Lumber Supply Company, Inc., also had a judgment against Earl Stuart and Nelda Stuart. The company was made a party defendant in the action and through its attorney admitted service of the summons and complaint, and its attorney served a notice of retainer on plaintiff's attorney and filed the same but did not prepare and serve an answer to the complaint. At the time of the trial the attorney and one of the officers of the company appeared and attempted to introduce testimony relative to its judgment. Objection was made to the introduction of any testimony with reference thereto on the ground that the company had not served and filed an answer or demurrer. The objection was sustained by the court. This was error. The judgment creditor should have been permitted to offer proof as to its judgment. This requires a reversal of the judgment so that the case may be reopened to permit this judgment creditor to offer its proof. If the proof establishes that this judgment creditor had a valid judgment lien at the date of the filing of the *lis pendens* or thereafter, the priority of its lien should be established.

Except for the amount of plaintiff's mechanic's lien claim, the determination of the trial court was correct as to the

amounts and priority of the claims for mechanics' liens. Next in priority is the Franzini mortgage. The judgment should next direct the payment of plaintiff's mortgage and the Gateway judgment ahead of the Segelke and Hines judgments.

*By the Court.*—Judgment reversed. Cause remanded for further proceedings and the entry of a judgment consistent with this opinion.